Patricia Coleman
4121 Goleys Ln
Racine, WI 53404
(262) 629-8364
Trishacole70@gmail.com
Plantiff, Pro Se

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF WISCONSIN**

**Patricia Coleman,**

Plaintiff,

v.                    Case No. _____   26-C -59

**Amazon.com Services LLC,**

Defendant.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Patricia Coleman, proceeding pro se, alleges as follows:

### I. JURISDICTION AND VENUE

**1.** This action arises under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., and its implementing regulations.

**2.** This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under federal law.

**3.** Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the Eastern District of Wisconsin.

**4.** Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), Charge No. 443-2025-03601.

**5.** The EEOC issued a Notice of Right to Sue dated January 12, 2026.

**6.** This action is filed within 90 days of Plaintiff's receipt of the Notice of Right to Sue, as required under 42 U.S.C. § 12117(a) and 29 C.F.R. § 1614.407(a).

### II. PARTIES

**7.** Plaintiff Patricia Coleman is an individual residing in Racine, Wisconsin.

**8.** Defendant Amazon.com Services LLC is an employer within the meaning of the ADA and conducts business in Wisconsin, including at its MKE1 facility located at 3501 120th Ave, Kenosha, Wisconsin 53144.

## III. FACTUAL BACKGROUND

### A. Nature of the Pattern – Continuing Violation

**9.** The conduct described herein constitutes a continuing pattern of harassment, retaliation, and disability discrimination beginning in or around May 2024 and culminating in Plaintiff's constructive discharge on September 26, 2025. Under the continuing violation doctrine, this course of conduct constitutes a single unlawful employment practice. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). At least one act within this pattern—the July 15–21, 2025 incidents—falls squarely within the EEOC charge period, anchoring the entire course of conduct before this Court.

### B. Early Harassment and Employer Awareness (May 2024 – July 2025)

**10.** Beginning in or around May 2024, when Plaintiff joined her assigned team, coworkers Eli and Tina subjected Plaintiff to ongoing harassment.

**11.** Plaintiff reported these concerns to HR Partner Téa Ryza and specifically informed her that the conduct had been ongoing since Plaintiff joined the team in 2024—and that it constituted harassment, not mere workplace conflict.

**12.** Plaintiff reported the same to her direct manager, Sean Parker, who acknowledged prior behavioral issues involving Eli and Tina, establishing that management had independent awareness of the pattern predating Plaintiff's formal complaints.

**13.** This early awareness by both HR and management established that Defendant had actual knowledge of the ongoing pattern of conduct from 2024 forward.

### C. Formal Complaint and Escalation (July 15–17, 2025)

**14.** On July 15, 2025, Plaintiff submitted a formal written harassment complaint through Amazon's internal reporting system.

**15.** Plaintiff reported the harassment and unsafe working conditions through multiple internal channels.

**16.** Plaintiff made reports to Human Resources personnel, including Téa Ryza, Tasha Evans, Aimee, and Tiara Ware.

**17.** Plaintiff also reported concerns through Amazon's Ethics channel and communicated directly with management, including Manager Sean Parker.

**18.** Plaintiff utilized Amazon's internal reporting systems, including the AtoZ application, to document and escalate her concerns.

**19.** These reports placed Defendant on repeated and widespread notice of the harassment, retaliation, and unsafe working conditions.

**20.** On July 16, 2025, Plaintiff contacted the Amazon Ethics Line and reported ongoing harassment by Eli, ongoing issues with Tina, safety concerns in the yard, fear of retaliation, and HR's failure to respond to the July 15 report. This call lasted approximately 31 minutes and created a formal Ethics case.

**21.** On July 17, 2025, HR Partner Tiara Ware acknowledged receipt of Plaintiff's complaints and confirmed review. HR Partner Téa Ryza separately confirmed receipt and acknowledged awareness of the Ethics report.

**22.** Despite these reports, no effective corrective action was implemented.

### D. Failure to Protect and Retaliation (July 20–22, 2025)

**23.** Between July 20 and July 21, 2025, Plaintiff was required to work in conditions where no manager was present while the same coworkers remained on shift. Plaintiff approached HR Rep Aimee, who stated she did not handle escalations and redirected Plaintiff to Tiara Ware, who was not available. Plaintiff was left without protection or leadership support.

**24.** On July 21, 2025, at approximately 11:00 PM, a coworker publicly called Plaintiff out over the site radio in a humiliating and targeted manner. Manager Parker and leadership heard the incident. Plaintiff notified Parker via Slack immediately.

**25.** This incident occurred after Plaintiff had engaged in protected activity under the ADA and was part of a continuing pattern of retaliatory conduct that included: continued exposure to unsafe conditions following protected complaints; Defendant's failure to separate Plaintiff from known harassers despite explicit requests; HR's refusal to treat retaliation as a distinct complaint; and management's failure to implement any safety plan after Plaintiff's protected reports.

**26.** Plaintiff met with HR and management the same night. During that meeting, Manager Parker acknowledged prior reports and admitted that the prior separation plan had failed. No new safety plan was implemented.

### E. Continued Employer Knowledge and Inaction (July 22–28, 2025)

**27.** On July 23, 2025, HR Partner Tasha Evans, Operations Manager Rafael Casiano, and Manager Parker acknowledged Plaintiff's concerns. No safety measures were implemented.

**28.** On July 25, 2025, Plaintiff sought medical treatment from physician Dr. Zebi Fatima. Dr. Fatima documented worsening anxiety, depression, and insomnia caused by work-related stress and harassment, and increased Plaintiff's medications accordingly.

**29.** On July 27, 2025, Plaintiff again reported to HR Rep Aimee that no manager was on site while Eli and Tina were present. Aimee stated she could not assist. HR Partner Tiara Ware subsequently contacted TAM Manager Amy Wegner for intervention.

**30.** On July 28, 2025, TAM Manager Amy Wegner arrived on site and remained with Plaintiff until after 2:00 AM. During this visit, Manager Wegner acknowledged the situation had been ongoing and confirmed that Manager Parker had also been experiencing difficulties with Eli and Tina—corroborating that the pattern of conduct was known at multiple levels of Amazon management. This acknowledgment was documented in a contemporaneous Slack message sent by Plaintiff to Manager Wegner at 1:56 AM on July 28, 2025, which Wegner did not dispute. Manager Wegner stated she did not believe the situation would improve.

### F. Lack of Safety Measures and Escalating Risk (August 3–12, 2025)

**31.** On August 3, 2025, HR acknowledged staffing limitations and continued lack of protective measures, and offered only that Plaintiff could leave early.

**32.** On August 4, 2025, Plaintiff was placed on physician-ordered medical leave due to severe psychological harm linked to workplace conditions.

**33.** On August 12, 2025, Defendant's Central Investigations confirmed that coworker Eli violated company policy. Despite confirming misconduct, Defendant failed to implement any safety plan, separation, or meaningful corrective action.

### G. Ongoing Failure to Protect (August – September 2025)

**34.** Between August 15 and August 25, 2025, Plaintiff followed up with ERCI representative Giselle regarding safety accommodations for her return but received no specific plan.

**35.** In early September 2025, Human Resources refused to treat Plaintiff's retaliation complaint as a separate issue. No safety measures were implemented prior to Plaintiff's return.

### H. Medical Deterioration and Constructive Discharge

**36.** On September 22, 2025, Plaintiff again saw Dr. Fatima and reported worsening depression, anxiety, insomnia, and distressing work-related experiences. Dr. Fatima added Wellbutrin XL and reaffirmed her diagnoses, as documented in medical records.

**37.** Upon the conclusion of her medical leave, Defendant had implemented no effective safety measures. The same individuals responsible for the harassment remained in the work environment.

**38.** Due to ongoing risk, the failure to implement reasonable accommodations, and Defendant's continued disregard for Plaintiff's safety and health, Plaintiff had no reasonable alternative but to resign.

**39.** Plaintiff resigned on September 26, 2025, constituting constructive discharge.

## IV. CLAIMS FOR RELIEF

### COUNT I – DISABILITY DISCRIMINATION (ADA)

**40.** Plaintiff incorporates all preceding paragraphs.

**41.** Plaintiff suffers from disabilities including anxiety, depression, and related conditions, all of which were known to Defendant.

**42.** Defendant had actual knowledge that the work environment was exacerbating Plaintiff's physician-diagnosed conditions. Despite this knowledge, and despite Plaintiff's repeated requests, Defendant took no meaningful remedial action.

**43.** Plaintiff requested reasonable accommodations related to her disabilities, including a safe working environment and separation from known harassers, which Defendant failed to provide.

**44.** Defendant failed to engage in any meaningful interactive process and failed to take necessary steps to protect Plaintiff's health and safety.

**45.** Defendant's conduct constitutes discrimination in violation of 42 U.S.C. § 12112(a) and (b)(5)(A).

### COUNT II – RETALIATION (ADA)

**46.** Plaintiff incorporates all preceding paragraphs.

**47.** Plaintiff engaged in protected activity by reporting harassment beginning in 2024, filing a formal complaint on July 15, 2025, contacting the Ethics Line on July 16, 2025, and requesting

accommodations related to her disabilities throughout.

**48.** Defendant subjected Plaintiff to a pattern of adverse actions and retaliatory inaction, including but not limited to: the July 21, 2025 radio incident; continued exposure to unsafe working conditions following protected complaints; failure to separate Plaintiff from known harassers despite explicit requests; HR's refusal to treat retaliation as a distinct complaint; and management's failure to implement any safety plan after Plaintiff's protected activity.

**49.** Defendant's retaliatory conduct—both actions and deliberate inaction—was causally connected to Plaintiff's protected activity and occurred in close temporal proximity to her complaints.

**50.** Defendant's conduct violated 42 U.S.C. § 12203(a).

## COUNT III – CONSTRUCTIVE DISCHARGE

**51.** Plaintiff incorporates all preceding paragraphs.

**52.** Defendant created and allowed intolerable working conditions, including through its failure to remedy known harassment and retaliation despite repeated notice over more than one year.

**53.** A reasonable person in Plaintiff's position would have felt compelled to resign.

**54.** Defendant's actions constitute constructive discharge under federal law. See Pa. State Police v. Suders, 542 U.S. 129 (2004) (establishing the constructive discharge standard requiring conditions so intolerable a reasonable person would feel compelled to resign, including Defendant's failure to remedy known harassment and retaliation).

## COUNT IV – HOSTILE WORK ENVIRONMENT (ADA)

**55.** Plaintiff incorporates all preceding paragraphs.

**56.** Plaintiff was subjected to severe or pervasive harassment based on her disability and linked to her protected activity, including ongoing humiliation, deliberate exposure to known harassers, public targeting over the workplace radio, and repeated refusals to provide a safe working environment—spanning from May 2024 through Plaintiff's constructive discharge on September 26, 2025.

**57.** The harassment was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment, as evidenced by Plaintiff's physician-documented worsening conditions requiring increased medication, and by Amazon management's own acknowledgment that the situation was unlikely to improve.

**58.** Defendant had actual knowledge of the hostile work environment through Plaintiff's repeated reports to HR beginning in 2024, formal complaints in July 2025, Ethics Line reports, AtoZ documentation, and direct management acknowledgments—yet failed to take prompt or effective remedial action at any point.

**59.** Defendant's conduct in creating, tolerating, and perpetuating a hostile work environment based on disability violates 42 U.S.C. § 12112(a).

## V. DAMAGES

**60.** Plaintiff suffered the following damages, including but not limited to:

**Economic Damages:**
- Back pay, including lost wages and benefits from the date of constructive discharge, including short-term disability leave paid at 60% of wages
- Front pay in lieu of reinstatement, to compensate for future lost earnings and benefits
- Loss of employment benefits, including health insurance and retirement contributions
- Loss of future earning capacity
- Out-of-pocket medical expenses incurred as a result of Defendant's conduct

**Non-Economic Damages:**
- Emotional distress and mental anguish
- Emotional pain and suffering
- Harm to reputation and professional standing
- Medical harm, including worsening anxiety, depression, and insomnia, documented by physician and requiring increased medication

**Punitive Damages:**
- Punitive damages for Defendant's reckless disregard of Plaintiff's federally protected rights

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:
- Award compensatory damages for emotional distress, mental anguish, and related harm

- Award back pay for all lost wages and benefits from the date of constructive discharge, including short-term disability leave at 60% pay
- Award front pay in lieu of reinstatement to compensate for ongoing and future economic harm
- Award reimbursement of medical expenses caused by Defendant's conduct
- Award punitive damages for Defendant's reckless disregard of Plaintiff's federally protected rights
- Award pre-judgment and post-judgment interest on all amounts awarded
- Award costs and any other expenses of this action
- Grant any other relief the Court deems just and proper

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 8, 2026

Respectfully submitted,

**Patricia Coleman**

4121 Goleys Ln

Racine, Wisconsin, 53404

262-629-8364

Trishacole70@gmail.com

Pro Se Plaintiff

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Milwaukee Area Office**
310 West Wisconsin Avenue, Suite 500
Milwaukee, WI 53203
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 01/12/2026

**To:** Ms. Patricia L. Coleman
134 Main St Apt 17
RACINE, WI 53403
Charge No: 443-2025-03601

EEOC Representative and email:   JACOB SOBIESCZYK
INVESTIGATOR
JACOB.SOBIESCZYK@EEOC.GOV

---

### DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 443-2025-03601.

On behalf of the Commission,

Digitally Signed By:Amrith Aakre
01/12/2026
Amrith Aakre
District Director